## AFFILIATION OF PUBLIC SCHOOL TEACHERS WITH A LABOR UNION.

Court of Appeals for Cuyahoga County.

### J. M. H. FREDERICK v. JOHN G. OWENS.

Decided, June, 1915.

*Schools—Appointment of Teachers in the Public Schools—Will Not be Interfered with by the Courts, When—Teachers Without Vested Rights After the Period of their Employment Has Ended—Are Not Disqualified by Affiliation with a Labor Union—Affidavit Charging a Judge with Bias and Prejudice—Disqualifies Him from Sitting in the Case—Contempt Proceedings Before One so Disqualified are Without Validity—Section 1687.*

1. The management of the public schools of a city is vested in the superintendent and board of education, and their decision as to the policy to be pursued in the employment of teachers will not be interfered with by the courts in the absence of a showing of fraud or abuse of discretion.

2. In the appointment of teachers the superintendent and board of education are authorized to employ whomsovere they will from among those having the necessary certificates and giving prefer- ence to teachers whose terms are expiring.    Such freedom of contract is guaranteed by the Constitution, and where the board adopts a resolution providing, among other things, that no applicant for position of teacher in the public schools will be given appoint- ment who is affiliated with a labor organization, the discretion so exercised is within the authority vested in the board.

3. An order of court attempting to control the discretion of the superintendent and board of education in the appointment of teachers, and enjoining them from refusing to appoint applicants for the position of teacher because such applicant is affiliated with a labor organization, or intends to become affiliated with such organization, or has participated, or intends to participate, in forming a union of the teachers of the schools, is beyond the power of the court and is a nullity, and the court is without power to punish a violation of such order in a proceeding for contempt.

4. The judgment and finding of the trial court in this case, that the superintendent of schools had violated the order of injunction, is not supported by the evidence and is contrary to law.

5. An affidavit charging the existence of bias and prejudice, definite and positive in its statements and filed in due time, dis- qualifies the trial judge under Section 1687, General Code, as

amended, 103 O. L., 417. The evidence of bias and prejudice on the part of the trial judge is so clearly manifest by the record and opinion in this case that this court would set aside the judgment and finding on this ground alone if none other existed.

6. The fact that a judgment involving the liberty of an individual is void will, when shown, constitute a good defense in his behalf, even though the judgment be one which can not be reversed by proceedings in error, and it is immaterial whether the judgment be void for want of jurisdiction to hear the case or because of want of power to enter the judgment.

7. Teachers have no vested rights in positions held by them in the public schools, and their rights terminate at the end of the period for which they were employed.

*John N. Stockwell,* City Solicitor, and *D. C. Westenhaver,* for plaintiff in error.

*John A. Cline* and *J. E. Mathews,* contra.

KINKADE, J.

On error to common pleas court.

A few years ago some of the teachers in the public schools of Cleveland formed an organization known as the Grade Teachers' Club. The club was formed to promote the interests of the members as teachers, and for the betterment of the system of teaching in general. One of the main purposes of the club was to secure higher wages for the teachers, another was to correct certain methods pertaining to the school system that were claimed to be erroneous and unnecessarily burdensome to both pupils and teachers. The club selected for its members the usual officers and committees, including an executive committee and a press committee, the plan being to direct the attention of the public to the claims of the teachers.

For the purposes of this opinion, we need refer only to the two objects of the club mentioned, and chiefly to the matter of increase of salaries for the teachers.

After the club had given the question of salary consideration and attention for a few years, without securing satisfactory results, the club considered the question of affiliating with the Federation of Labor of Cleveland, and through that body with the American Federation of Labor, to the end that the club might thereby bring to its assistance the influence of these power-

ful union labor organizations and, with the power of the club thus supplemented, thereby be able to secure from the board of education higher salaries for the teachers.

This plan of affiliating with union labor, for the purpose mentioned, was discussed in the club and in various committee meetings. Distinguished leaders of union labor were invited to and did address the club, advising the carrying forward of the plan proposed. Full and free discussion was engaged in by members of the club, many favoring and others opposing the plan. Full publicity was given in newspapers of all that was taking place. By a very large majority of the members, the club voted to approve the plan.

The board of education thereupon determined that the plan adopted by the club, as stated, would, if carried out, be detrimental, instead of beneficial, to the schools of Cleveland, and pursuant to this decision the board passed a resolution disapproving of the action of the club and calling upon all teachers who were members of the club, who desired to remain as teachers in the schools, to abandon the plan. The board decided, and so resolved, that participation by teachers in the plan of affiliating with union labor, as stated, at any time while teachers, would be treated as equivalent to a resignation by the teachers; that all future contracts or appointments to teach should contain a stipulation to this effect, and that no teacher should be appointed or reappointed who did not freely first assent to these requirements of the board.

The superintendent of schools, J. M. H. Frederick, was directed by the board of education to notify all teachers of this decision of the board and to act in accordance with the resolution in making appointments or reappointments of teachers. The teachers were so notified by the superintendent. All these facts were fully discussed in the teachers' club and in the newspapers of the city. At this stage of events John G. Owens, a tax-payer of the city of Cleveland, filed a petition in the court of common pleas, setting forth the foregoing facts and averring, among other things, that said resolution adopted by the board of education was null and void and an abuse of discretion on the part of the members of the board, and that the carrying out

of the resolution would accomplish a great wrong against the teachers, pupils, tax-payers and citizens of Cleveland in general, by needlessly throwing out of employment a large number of experienced and competent teachers whose places could not be filled by others equally competent, all of which, Owens averred, would result in throwing the whole school system into a confused and chaotic condition and incur an unwarranted increase in the expenditure of public money made necessary to meet these unusual conditions, all to the great and irreparable damage of Owens and the other tax-payers of Cleveland, for which no remedy at law existed. An injunction was prayed for against the board of education and the superintendent of schools to prevent the carrying into effect of the resolution.

The board of education and the superintendent filed an answer to the petition, admitting the passage of the resolution and denying that the enforcement of the resolution would in any wise produce the results set forth in the petition. The answer denied that the board was abusing its discretion or was in any wise acting in an unlawful manner.

The common pleas Judge, Honorable W. B. Neff, who had heard the application for an injunction shortly prior to the close of the school year of 1914, found, on June 22, 1914, that the allegations of the petition were true; that the resolution adopted by the board of education was null and void; and, so finding granted the prayer of the petition and issued an injunction in these words:

"The board of education of the city school district of the city of Cleveland, and J. M. H. Frederick, are perpetually enjoined from enforcing said resolution and carrying the same into effect; that said defendants are enjoined from refusing to appoint, reappoint or confirm any applicant for a position of teacher in the schools of said school district, because such person is affiliated with any labor organization, or intends to become affiliated with any labor organization, or because any such applicant has participated in or intends to participate in any effort to form a union of the teachers of the schools of the said district."

The board of education thereupon gave notice of an intention to appeal the case to the court of appeals and attempted to per-

fect the appeal. The omission to file an appeal bond resulted in the appeal being dismissed by the court of appeals, and this action by the court of appeals was affirmed by the Supreme Court.

Thereafter, six, and only six, out of the several hundred teachers, members of the Grade Teachers' Club, a very large majority of whom had, as stated, been active in urging affiliation by the club with union labor organization, failed of reappointment as teachers for the next ensuing year.

The superintendent or his assistants interviewed these six teachers, respectively, prior to the final closing and making public of the full list of teachers for the coming year.

The evidence found in the record discloses some conflict between these teachers and the superintendent and his assistants as to what was said by each at these interviews. Following the interviews, these teachers, assuming, as they did, that the door had been closed against them, gave interviews to a newspaper in which the conduct of the superintendent and his assistants, as well as the school-teaching system in general, under their management, was freely discussed and sharply criticised.

The superintendent claims that prior to the time these teachers gave these interviews to the newspapers, he had not finally determined against their reappointment. The superintendent and his assistants claim these six teachers were told at these interviews that they were out of harmony with their superiors in the management of the schools, and that unless their attitude in this respect was altered, they would not be reappointed.

These six teachers at the same time wrote six letters, one each, all substantially alike in terms, to the superintendent, promising harmonious co-operation with their superiors if reappointed for the coming year. It is admitted by one of the counsel for Owens, that these six letters were prepared under his instruction and were all sent at one time and in one package from his office to the office of the superintendent of schools, Mr. Frederick. It was stated by the counsel under whose direction these letters were written and sent that they were so prepared and sent to test the good faith of the claim on the part of the superintendent that he was insisting only upon harmonious co-operation by teachers with their superiors.

These six teachers were claiming and giving it out to the public through the newspapers that they had been, or were about to be, denied reappointment on the ground that they had been active in urging affiliation of the members of the teachers' club with union labor organizations as stated.

The claim of the superintendent was and is that these six duplicate letters, coming in one package from the attorney representing the teachers, were no evidence of good faith and a harmonious spirit on the part of the teachers, but were a mere subterfuge put forward to secure reappointments.

When it became definitely and finally known that these six teachers had failed of reappointment, Owens, who secured the injunction, filed in court on September 9, 1914, a charge against superintendent Frederick, alleging the following:

"That the defendent, J. M. H. Frederick, is guilty of disobedience of, and resistance to, a lawful order, judgment and command of this court, to-wit, the judgment rendered by this court in this cause on the 22d day of June, 1914. Said disobedience of and resistance to said judgment consists in this, to-wit: that on or about the 21st day of June, 1914, * * * said defendant, J. M. H. Frederick, * * * did refuse to appoint, reappoint or confirm the following persons, who, at that time and prior thereto, were and have been applicants for the position of teacher in schools of said school district, to-wit: (naming said six teachers); that each of said teachers had served creditably in the schools of said school district for long periods of time, varying from ten to twenty-five years, and had been commended for their fidelity and competency not only by the incumbents of the superintendent's office preceding the defendant Frederick, but by said defendant Frederick himself; that no reason exists or has been assigned for the dismissal and nonappointment of said teachers, and this plaintiff avers that the sole and only reason actuating the said defendant Frederick in refusing to reappoint said teachers is that said applicants are affiliated with a labor organization known as the Grade Teachers' Association, or intended to become affiliated or to continue their affiliations with said organization, and to become affiliated with the Cleveland Federation of Labor, a labor organization, and because they, and each of them, in varying degrees have participated in efforts to form and maintain a union of the teachers of the schools of said school districts."

Thereupon, on September 9, 1914, Judge W. B. Neff made the following order:

"It is therefore ordered that said defendant, J. M. H. Frederick, appear in this court on the 14th day of September, 1914, in Court Room No. 10 thereof, at the hour of 10 o'clock A. M., to answer said charge, and show cause, if any he has, why he should not be punished as for contempt because of said violation of said decree."

The foregoing citation was duly served on Mr. Frederick, with copies of the charge, on September 10, 1914.

On the same day, September 10, 1914, Mr. Frederick duly filed in the office of the clerk of the court of common pleas an affidavit alleging that Judge Neff was biased and prejudiced against him, and thereby was disqualified to sit in the hearing of the charge of contempt.

The question of the existence of the alleged bias and prejudice on the part of Judge Neff was later passed on by Chief Justice Nichols of the Supreme Court, who found that no bias or prejudice sufficient to disqualify existed.

Without entering his appearance, motions to quash the citation and to dismiss the defendant, based on several grounds, including want of jurisdiction to hear the original action and want of power to make the original order claimed to have been violated, were duly made by Frederick and were overruled with exceptions saved.

When counsel for Frederick were directed by Judge Neff to proceed with the trial before him, on September 30, 1914, and before the commencement of the trial, the city solicitor, Mr. J. N. Stockwell, one of the counsel for the defendant, Frederick, made the following statement to Judge Neff:

"Before we proceed to the hearing in this case, I would like to say a word with reference to the situation here. This case has been a source of embarrassment to a good many of us, and perhaps to the court, certainly to me, and I feel that what I have to say is said under that embarrassment. The court well knows what the procedure was when the motion to cite Mr. Frederick for contempt was made; Mr. Frederick filing an affidavit of bias and prejudice. That motion was heard by Chief Justice Nichols, and in the course of that proceeding certain

testimony was introduced which was passed on by the court, and this court, then, after Judge Nichols had said that he would dismiss it because no evidence had been introduced of bias and prejudice, unless Your Honor felt that he ought to remand it; and Your Honor then, after consultation, said that you felt no bias and prejudice in the case. In behalf of Mr. Frederick, who is here, and is here under circumstances which may deprive him of his property and liberty, I feel it my duty to Mr. Frederick, and my duty as an officer of this court, to Your Honor, to say what I have to say, and that is that Mr. Frederick now feels here in this court that he will not be able to secure a fair trial under all the circumstances. Of course this is a criminal proceeding, a *quasi*-criminal proceeding, and a proceeding in which Mr. Frederick may, through Your Honor's action, be deprived of his liberty. It seems to me that it is due to Mr. Frederick, and to the interests of justice generally, that if a man is cited here, with the penalties which may attach to any conduct which has been his, that every possible opportunity ought to be given to Mr. Frederick to see that he has a fair trial, not only to see that he has a fair trial, but to satisfy him that he is to have a fair trial. That is his feeling. We, therefore, suggest that under all these circumstances Your Honor ought not to hear this motion, and I therefore make application, as an officer of this court, to send it to some other judge. I feel that if I were sitting on the bench, and a person to be tried by me as court and jury, to pass upon the law and the facts, that if such a feeling existed on the part of the defendant, counsel should call that fact to my attention. With that in mind, and with the statement that this is his feeling here, we ask Your Honor to send this case back to the assignment room, because this is a citation for contempt of the order of court, not a citation for contempt of this particular branch of the court—that Mr. Frederick may have an opportunity to be tried by a branch of this court where he feels that he will have every possible opportunity. He does not now feel that, before this branch of the court. It is a reasonable request. He has said certain things in the presence of this court. He feels that there is a bias and prejudice; and with that in mind, I make this application. I know of no case in the whole history of the court, at least in the relations which I have had with this court, where the suggestion has been made, if the litigant does not feel that he wants to try that case before that particular judge to whose room it happens to be sent—I know of no case where even a suggestion of this kind has not prevailed. With that in mind, we make this application."

The court forthwith overruled the application so made by Mr. Stockwell.

Thereupon the defendant, Frederick, filed his answer, denying all the allegations charging him with having violated the order of injunction, and averring that at all times since the issuing of that order he had acted in full compliance therewith in every respect, and had at no time taken any step towards carrying into effect the resolution of the board of education, and that at no time had he any intention to in any way violate the order of the court. Thereupon the trial before Judge Neff upon the charge of contempt proceeded. Many witnesses were examined on both sides. The following journal entry, made on October 30, 1914, shows the decision of the court, to-wit:

"Now comes the defendant, and the complainants, and this cause comes on to be heard on the evidence touching the defendant's alleged disobedience of the order of the court made heretofore herein; and upon due consideration the court finds that said defendant is guilty as charged, and is thereby guilty of contempt. It is therefore adjudged that said defendant pay a fine of $500, and costs of this proceeding, and execution is awarded therefor; and it is further ordered that said defendant be committed to the jail of this county for a period of ten days. To which judgment the said defendant excepts. The motion for a new trial of this case is overruled, to which ruling the defendant excepts."

The record contains over thirteen hundred typewritten pages of the oral testimony taken, and in addition thereto a very large number of exhibits. This is a proceeding in error to reverse the judgment of the court of common pleas, and final judgment by this court, discharging the defendant, is asked here.

Many errors are assigned by counsel for Frederick, which they insist necessitate not only a reversal of this judgment of conviction and sentence, but also final judgment in his favor here. We think it unnecessary to state all the alleged grounds of error with the detail in which they are presented by counsel. The principal grounds, summarized, are:

That the trial judge, Honorable W. B. Neff, was wholly disqualified, by reason of bias and prejudice, to hear the case; that

the court had no jurisdiction to hear the original case in which the order of injunction was granted; that the plaintiff in that action, Owens, the tax-payer, had no right to commence or maintain the action; even conceding the right of Owens, the tax-payer, to thus bring this subject-matter to the attention of the court and the power of the court to consider his petition thus presented, nevertheless the court was wholly without power to issue the order of injunction that it did issue, and that for this reason alone, as well as on other grounds, the order was a mere nullity, and, being so, could not form a sufficient basis to sustain a charge of contempt arising by reason of an alleged violation of such void order; that incompetent evidence, prejudicial to the accused, was admitted over objection and exception; and that the judgment of conviction and sentence is contrary to law and is not sustained by sufficient evidence.

The defendant in error, Owens, claims that the question of jurisdiction and the question of Owens' capacity to bring and maintain the action were necessarily involved in and were passed upon in the original action, and that the judgment of the trial court entered therein can not now be attacked collaterally in this contempt proceeding.

In view of the conclusion we have reached upon the other grounds of error assigned, we deem it unnecessary to spend any time discussing this question of jurisdiction and capacity to sue. We go directly to the controlling legal question in this case, to-wit: Had the court the power to make the order that it did make? Manifestly, if the court was without power to make the order, then the order was utterly void, and, being void it affords no ground upon which to base a prosecution for contempt arising by reason of an alleged violation of the order. In any case involving the liberty of an individual, the fact that the judgment, by virtue of which he is denied his liberty, is void will, when shown, constitute a good defense in his behalf, even though the judgment be one which can not be reversed by proceedings in error. It is quite immaterial whether the judgment be void for want of jurisdiction to hear the case, or because of want of power to enter the judgment. The fact that it is void, for any reason, and not merely voidable, is sufficient.

In the case of *Siebold, Ex parte*, 100 U. S. (25 L. Ed., 717), this language appears in the opinion of Mr. Justice Bradley on pages 376 and 377:

"The validity of the judgment is assailed on the ground that the acts of Congress under which the indictments were found are unconstitutional. If this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. An offense created by it is no crime. A conviction under it is not merely erroneous, but is illegal and void, and can not be a legal cause of imprisonment. It is true, if no writ of error lies, the judgment may be final, in the sense that there may be no means of reversing it; but personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on habeas corpus by a superior court or judge having authority to award the writ. We are satisfied that the present is one of the cases in which this court is authorized to take such jurisdiction. We think so because, if the laws are unconstitutional and void, the circuit court acquired no jurisdiction of the causes. Its authority to indict and try the petitioners arose solely upon these laws."

Many other decisions of the Supreme Court of the United States sustain the same proposition.

By the law of Ohio it was the duty of Frederick, the superintendent of schools, to appoint the teachers subject to approval by the board of education. The law prescribes the qualifications of teachers and provides that teachers already in the schools shall be given preference in the matter of appointment as against persons who have not been appointed to teach. Aside from these conditions imposed, the statute makes no attempt to control or regulate the discretion of the superintendent and of the board of education in the selection of teachers the whole subject being committed to their sound discretion.

We have nothing to do in this case with the question of the dismissal of teachers during the term of their employment, as none were dismissed. Neither the superintendent nor any of his assistants nor any of the teachers have any vested right in the position that they hold. The right to longer occupy these positions terminates at the end of the period for which the ap-

pointment has been made, and thereafter the right to continue therein depends upon the judgment of the superintendent and the board in so far as assistants and teachers are concerned, and of the board alone in so far as the superintendent is concerned. It was necessary that this power of selection, appointment and reappointment, should be vested somewhere, and the Legislature saw fit to vest it in the superintendent and in the board of education. The statutes will be searched in vain to find any provision to the effect that the superintendent and the board may only make selections and appointments when they are able to give reasons therefor that are satisfactory to the courts; and the record in this case will be searched in vain for evidence tending to show that any teacher has been appointed who was not qualified to fill the position to which she was appointed. It might well be contended that the superintendent and the board of education were abusing the discretion reposed in them by the Legislature in the selection of teachers if it were shown to be true that they had intentionally and wilfully selected incompetent teachers when competent teachers were available. No such question is presented here. The question here is, there being no showing that any teacher appointed is incompetent to perform the duties of the position, can the superintendent and the board of education be held to have abused their discretion in making selections, because they selected the ones they did instead of others who might have been chosen? It being true that neither the superintendent nor the board is required by law to state the reasons to any one for the selections made, can the court enumerate certain reasons as insufficient and then command the superintendent and the board of education not to omit to appoint for those stated reasons, and then punish them for contempt if they do so?

The Supreme Court of the United States, in the case of *Coppage* v. *Kansas*, 236 U. S., 1, announced again, on January 25, 1915, the doctrine that any law which abridges the freedom of contract is in violation of the Constitution of the United States. Since that decision, the Supreme Court of Ohio, in the case of *Jackson* v. *Berger*, 92 O. S., —, decided May 4, 1915, has held that Section 12943, General Code, which reads—

"Whoever being a member of a firm, or agent, officer or em-

ployee, of a company, corporation or person, prevents employees from forming, joining or belonging to a lawful labor organization or coerces or attempts to coerce employees by discharging or threatening to discharge them from their employ, or the employ of a firm, company or corporation, because of their connection with such labor organization, shall be fined not more than one hundred dollars, or imprisoned not more than six months, or both,''

—is unconstitutional and void. In the case mentioned, decided by the Supreme Court of the United States, that court was considering the validity of a Kansas statute substantially the. same as the section of the General Code above quoted. A large number of decisions were reviewed by the United States Supreme Court in the case cited, and the law pertaining to legislation of this character is there very clearly and definitely stated, and, as I have said, that decision has been followed by the Supreme Court of Ohio in the case mentioned.

We heartily concur in these decisions, and we will not attempt any restatement here of the principles so clearly and comprehensively announced by the Supreme Court of the United States and followed by our own Supreme Court. These two decisions state the law as applied to the rights of an employer to be precisely the same as it has long been understood to be with respect to employees, that is to say, that neither may compel the other to continue the relation of employer and employee beyond the term of service agreed upon, nor can either compel the other to enter into any new contract for service except by mutual consent of the parties. The law thus stated as applicable to individuals, partnerships, corporations and other associations of individuals handling their own money, should surely apply with equal force to public officials who are not spending their own money, but who are trustees of a public fund raised by taxation, and whose duty it is to make these expenditures according to their best judgment for the common benefit of all. Individuals may be very liberal, if they so elect, with their own money. Public servants may not have the funds in hand with which to do as they would like in the matter of increasing the salaries of persons employed by them. They act, as is well known, under many limitations, including often an insufficient tax levy.

It is difficult to conceive of anything that would be more certainly productive in practical application than the proposition that the courts may state to public officers the various grounds upon which they shall not determine against appointing an applicant for a position under the control of such officers. This doctrine extended to its logical result necessarily takes from the public officer very much of the authority given him by law to make the selection in question, and to that extent, and without the slightest warrant of law, passes this power over to the courts. We are very clearly of the opinion that nothing exists in the statutes giving the courts any such power. We think it would be quite as justifiable for the courts to undertake to regulate all political appointments in the state by prescribing that different political affiliations should not furnish sufficient ground for denying appointments, and then proceed to punish the public officer who violated the order by denying appointment on political grounds.

The members of the board of education are elected by the people. If the people make mistakes in their selection of men to fill these important positions, the ballot box, and not the courts, is the place to correct these errors.

We hold that the trial judge in this case was wholly without power to issue the order of injunction which he did issue against the board of education and the superintendent. Having reached this conclusion, it follows of necessity that the judgment must not only be reversed, but final judgment entered here discharging the defendant, and we might stop here in our consideration of this case. However, certain other matters of importance have been argued by counsel, and we will consider some of them.

We have examined, with great care, the evidence submitted in this case. It would serve no useful purpose to attempt a discussion, in detail, of the thirteen pages of testimony and the very large number of exhibits, nor would it be practicable within the reasonable limits of an opinion. Therefore, I will state only the conclusions that we have reached with respect to the evidence. It is this: That the evidence falls very far short of being sufficient to justify the judgment of conviction and sentence in this case. We hold the judgment is contrary to law and contrary to the evidence.

I now go to a question presented in this case that is by no means free from doubt so far as the provisions of the statutes are concerned, and concerning which counsel for plaintiff in error remarked, in presenting it, that they were not very partic-. ular which way it was decided, but only that it be decided, to the end that they might not be met with the claim in the. Supreme Court that it had not been presented to this court and consequently could not be reviewed there. I refer to the question of claimed bias and prejudice on the part of the trial judge. The affidavit of the defendant, Frederick, charging the existence of bias and prejudice, was filed in due time and was definite and positive in its statements. This affidavit was called to the attention of the Chief Justice of the Supreme Court, who heard the evidence presented by the affidavit and reached a conclusion adverse to Mr. Frederick, and consequently the trial proceeded before Judge Neff. A majority of this court are of the opinion that the filing of this affidavit disqualified the trial judge, under 1687, General Code, as amended 103 O. L., 417, notwithstanding the other provisions in the code with respect to the Chief Justice of the Supreme Court hearing and deciding the question of the existence of prejudice when charged against a judge of the court of appeals. One member of this court is of opinion that the provisions of Section 1687, General Code, amended as stated, only apply when there is in fact an interest, bias or prejudice, and that the section requires a hearing before the Chief Justice of the Supreme Court to determine the fact, in accord with the provisions of Article IV, Section 3 of the Constitution.

It will be noted that Section 1527, General Code, found in the same amendatory act, 103 O. L., 413, makes provision, with respect to the disposition of similar affidavits filed against judges of the court of appeals, markedly different from the provisions of Section 1687, General Code.

It has long been the contention of a very large majority of the practicing lawyers in the state that when an affidavit is filed charging the trial judge with bias and prejudice, that affidavit thus filed should operate to disqualify that judge. We think a great majority of the practicing lawyers have felt the embarrassment and the impracticability of trying to prove that bias

and prejudice exist in the mind of a trial judge. The conviction in the mind of the lawyer or the litigant that it does so exist arises out of a multitude of minute circumstances not easy to bring to the attention of any tribunal trying the question. It is very easy to prove relationship or interest, or to disprove these charges is averred in an affidavit. Not so with the question of bias and prejudice. This court would have preferred that this question might first have been settled by the Supreme Court, and we appreciate keenly the delicacy of any decision upon it by this court in this action. However, we are asked to rule upon the question, and we think we should rule upon it, and, pending further light from the Supreme Court directly on the subject, we hold that, under Section 1687, on the filing of this affidavit the trial judge was without power to hear the case. We have not before us the evidence that was submitted to the Chief Justice on this question, and the Chief Justice did not then have for consideration the evidence in the contempt case or the opinion of the trial judge finding the defendant guilty and imposing sentence. After a thorough review of this case we are firmly of the opinion that if the Chief Justice had been able to look into the mind of the trial judge and see there what is disclosed to us by the evidence in this case and the opinion of Judge Neff, the Chief Justice would very promptly have rendered a decision the very opposite of what he did render on the question of the existence of bias and prejudice. We heartily commend to the Chief Justice, if this case shall reach the Supreme Court, an examination of the evidence and the opinion of the trial judge, on this question of prejudice, and in this connection we call special attention to the statement of the city solicitor, Mr. Stockwell, made to Judge Neff at the commencement of the trial. Every member of this court served for a number of years on the court of common pleas. None of us recall any case in which a trial judge insisted upon hearing a case under circumstances like these attending the trial of this case. It is self-evident, and not contended by counsel to the contrary, that there were many other common pleas judges in the city of Cleveland any one of whom would have been entirely satisfactory to both parties. The defendant was not asking that the case should be heard by some particular judge; he only

asked that he be not judged by that particular judge. It is almost as important, and particularly so in a case where individual liberty is involved, that a litigant shall believe that he will have a fair trial, as it is that he have a fair trial. It is neither becoming nor in furtherance of the ends of justice that a trial judge insist that he and nobody else shall try a given case, notwithstanding the fact that many other equally competent judges are available and notwithstanding the fact that he is thoroughly convinced, as he must have been in this case, that both the defendant and his counsel honestly believed the trial judge to be biased and prejudiced. It is not uncommon for reviewing courts to reverse judgments, even in civil actions, on account of the misconduct of juries. It is somewhat rare to find the claim honestly made by reputable counsel that a judgment should be reversed on account of the intentional misconduct of a court.

We are unanimously of the opinion that the evidence of an existing bias and prejudice against the defendant, Frederick, upon the part of the trial judge in this case, is so manifest from the evidence and the opinion that the judgment ought to be set aside, as contrary to law, on that ground alone, if no other existed.

The freedom of contract guaranteed by the Constitution to all men, and the free exercise of the discretion reposed in the board of education and the superintendent of the public schools, by the statutes of Ohio, are not to be abridged or destroyed by a judicial injunction.

We have not here for consideration and determination the question of whether it was wise or unwise for the teacher's club of Cleveland to affiliate with union labor organizations, and we have no opinion to express upon that subject. That they had a perfect right to affiliate with these organizations and the organizations with them, if they saw fit, everybody must concede. That right is guaranteed to both by the Constitution. Neither are we concerned with the question whether the resolution passed by the board of education was wise or unwise, and we have no opinion to express concerning that. If the board honestly believed that the contemplated affiliation would for any reason be detrimental to the schools, it had a legal right to dis-

courage the completing of this affiliation by the teachers. The resolution of the board coerced nobody, not even the board of education itself. It could have been rescinded at any time by the board when it saw fit to do so.

Whether the best and most modern methods of teaching are employed in the schools of Cleveland; whether, as claimed by some teachers, the schools are over-supervised by too many assistant superintendents and special teachers; whether the superintendent is a suitable man for the position which he holds; whether the grade teachers are in fact underpaid, as they claim, for the work they perform, and whether the board of education could pay higher salaries to teachers out of the funds at their disposal for this purpose, are all important questions for the consideration of the board of education of Cleveland, but they are not questions to be decided by this court, and we express no opinion upon any of these matters.

The question as to whether a refusal alone to appoint an applicant to a position, or the discharge alone of one in a position, could never be held to be coercion and therefore unlawful, where the term of service was at will or had terminated by lapse of time, was directly decided in the case of *State* v. *Bateman* (10 Dec., 68; 7 N. P., 487) in a very able opinion rendered by Judge Isaac P. Pugsley, then sitting as a common pleas judge of Lucas county. Able counsel appeared in that case on both side, and after the fullest investigation of authorities, Judge Pugsley wrote an opinion in the case so thoroughly satisfactory to counsel that the case was prosecuted no further. It was there decided that the exercise of a legal right, to-wit, the right to terminate an employment when the employment was at will, or at the close of the term of employment when a fixed term was agreed upon, would not support the claim that the exercise of this legal right amounted to an unlawful coercion of the employee whose term of service was thus terminated. The Supreme Court of the United States in the case mentioned cite this decision of Judge Pugsley with approval.

For the reasons stated, the judgment of the court of common pleas will be reversed, and final judgment will be entered here discharging the defendant, Frederick.

RICHARDS and CHITTENDEN, JJ., concur.